# EXHIBIT 4
# To
# Declaration of Cassandra Merrick

# REDACTED

Highly Confidential

Attorneys' Eyes Only

Filed Under Seal

Pursuant to the Amended Stipulated Protective Order Entered in this Case at Docket No. 59 on July 6, 2016

# *Kuryakyn v. Ciro* -- Rule 30(b)(6) Witness Chart

| # | Topic of Examination (Subject to Objections) | Witness |
|---|---|---|
| 1 | Kuryakyn's calculations of its alleged damages in this litigation. | Dan Kretovics |
| 2 | The "investigation" referenced in paragraphs 14 and 75 of the Amended Complaint, including:<br>a) all individuals who were involved in the "investigation";<br>b) all steps of the "investigation"; and<br>c) all documentation relating to the "investigation." | Pete Amenda and Kathy Burke |
| 3 | Kuryakyn's relationships, including quality concerns or complaints, with the following suppliers and/or any affiliates, employees, or agents of the suppliers from January 1, 2012 to the present:<br><br>▬▬▬▬▬▬▬<br>▬▬▬▬▬▬▬▬▬▬▬<br>▬▬▬▬<br>▬▬▬▬▬▬▬<br>▬▬▬ | Kevin Miller |
| 4 | The parts supplied by the following to Kuryakyn from January 1, 2014 to present:<br><br>▬▬▬▬▬▬▬<br>▬▬▬▬▬▬▬▬▬▬▬<br>▬▬▬▬<br>▬▬▬▬▬▬▬<br>▬▬▬ | Pete Amenda |
| 5 | Kuryakyn's efforts to qualify suppliers from January 2014 to the present, as described at paragraphs 64–67 of the Amended Complaint, other than the following:<br><br>▬▬▬▬▬▬▬<br>▬▬▬▬▬▬▬▬▬▬▬<br>▬▬▬▬<br>▬▬▬▬▬▬▬<br>▬▬▬ | Kevin Miller |

| # | Topic of Examination (Subject to Objections) | Witness |
|---|---|---|
| 6 | For each trade secret that Kuryakyn and/or MAG claims has been misappropriated by Defendants:<br>a) the trade secret;<br>b) how you have maintained the confidentiality of the trade secret;<br>c) each product that you claim uses, or was developed using, the trade secret;<br>d) how Kuryakyn claims that Defendants contributed to the misappropriation of the trade secret;<br>e) on what basis Kuryakyn alleges Defendants knew or had reason to know that the alleged trade secret information constituted a Kuryakyn trade secret;<br>f) which individuals at Kuryakyn had access to the alleged trade secret information;<br>g) what third parties had access to the alleged trade secret information;<br>h) agreements with third parties with respect to the alleged trade secret information;<br>i) how each alleged trade secret derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons;<br>j) all documents relating to the above. | Kevin Miller |
| 7 | The terms of Thomas Rudd's employment with Kuryakyn and the conduct that constitutes his alleged breaches of the same. | Pete Amenda |
| 8 | The terms of Ken Madden's employment agreement with Kuryakyn and the conduct that constitutes his alleged breaches of the same. | Pete Amenda |
| 9 | The terms of Darron May's employment agreement with Kuryakyn and the conduct that constitutes his alleged breaches of the same. | Pete Amenda |
| 10 | The terms of Christopher Lindloff's employment agreement with Kuryakyn and the conduct that constitutes his alleged breaches of the same. | Pete Amenda |
| 11 | Kuryakyn's alleged knowledge and ownership of the Ciro logo, including:<br>a) Kuryakyn's alleged discovery of the Ciro logo on its computer system;<br>b) the terms of Ken Madden's employment agreement with respect to works of authorship;<br>c) Kuryakyn's allegation that Ken Madden created the Ciro logo "[p]ursuant to that directive from [Thomas Rudd], and in the course of his employment with Kuryakyn";<br>d) Kuryakyn's first discovery or awareness of the Ciro logo. | Pete Amenda |

| # | Topic of Examination (Subject to Objections) | Witness |
|---|---|---|
| 12 | The marketing and promotion of Kuryakyn products through:<br>a) Kuryakyn's website;<br>b) Kuryakyn's product catalog;<br>c) motorcycle rallies;<br>d) trade shows; and<br>e) distributor events. | Dan Kretovics |
| 13 | Kuryakyn's alleged proprietary two-stage design process. | Pete Amenda |
| 18 | Any Kuryakyn policy or contract that purports to forbid employees from working outside of their employment with Kuryakyn. | Dan Kretovics |
| 19 | Kuryakyn's allegations that the megaphone muffler described at paragraph 113 of the Amended Complaint "is based upon, and incorporates features that are, Trade Secrets of Kuryakyn." | Pete Amenda |
| 20 | Kuryakyn's allegations that Defendant Rudd purchased copies of the design prints and the prototype for the megaphone muffler and his alleged copying of Kuryakyn's Trade Secrets relating to the design of the megaphone muffler, as described at paragraphs 115–118 of the Amended Complaint. | Pete Amenda |
| 21 | Kuryakyn's allegations that the air cleaner described at paragraph 122 of the Amended Complaint "is based upon, and incorporates features that are, Trade Secrets of Kuryakyn." | Pete Amenda |
| 22 | Kuryakyn's allegations that the lifter block cover described at paragraph 126 of the Amended Complaint "is based upon, and incorporates features that are, Trade Secrets of Kuryakyn." | Pete Amenda |
| 23 | Kuryakyn's allegations that the cylinder base cover described at paragraph 130 of the Amended Complaint "is based upon, and incorporates features that are, Trade Secrets of Kuryakyn." | Pete Amenda |
| 24 | Kuryakyn's efforts to recruit and train new designers since January 2013. | Dan Kretovics |
| 25 | Alleged delays to Kuryakyn's new products incurred as a result of purported acts by Defendants. | Pete Amenda |
| 26 | Kuryakyn's [general] hard copy and ESI document retention and/or preservation and/or preservation policies, practices, and procedures. | Kathy Burke |
| 28 | The server(s) or computer system on which each alleged trade secret is stored. | Kathy Burke |
| 29 | Payments and/or agreements between Kuryakyn and Defendant Ken Madden. | Dan Kretovics |
| 31 | Any and all interviews conducted for new designers at Kuryakyn beginning in November 2013 through the present. | Dan Kretovics |
| 32 | The decision to change Thomas Rudd's role and title at Kuryakyn between 2011 and December 31, 2013. | Dan Kretovics |